16  559
31ap388

FORTUNE C. BROWN AND HOBART F. ATKIN-
SON, EXECUTORS, ETC., OF MARY CLARK PROCTOR,
DECEASED, APPELLANTS, v. WARREN R. CLARK AND
TRUMAN A. PROCTOR, RESPONDENTS.

*Revival of a will revoked by the marriage of the testatrix — what sufficient to effect.*

Where a married woman seeks to revive a will, revoked by her marriage, by a
codicil thereto, it is not necessary that the will itself should be re-executed,
re-acknowledged or republished, but it is sufficient, if there be a clear and
distinct recognition of the existence and validity of the will, at the time of the
execution of the codicil.

APPEAL from the decree of the surrogate of Monroe county,
refusing to admit to probate the last will and testament of Mary
Clark Proctor. The maiden name of Mrs. Proctor was Mary J.
Clark.

On the 25th of May, 1873, Miss Clark executed a last will,
whereby she disposed of a large personal estate and valuable real
estate among a few of her relatives, and the part not given to
them was given to divers incorporated religious bodies and to
charitable and pious uses.

Soon after the execution of the will she went with her father to
Europe, and remained there one year, when she returned to this
country. In October, 1876, she intermarried with Truman A.
Proctor and cohabited with him till her death in October, 1877.

After her marriage to Proctor she was informed that her will,
which she had executed before her marriage was revoked by such
marriage, and that in order to revive it she should execute a codi-
cil to it, in which she should declare that she revived said will.
In conformity to this advice she executed a codicil which con-
tained the following, amongst other provisions, viz. :

"I, Mary Clark Proctor, of Rochester (formerly Mary Jane
Clark), the testatrix in a last will and testament made by me under
the latter name, dated 25th August, 1873, consisting of eight pages
(witnessed by C. W. Huntington and Henry E. Bull), do hereby
republish, reaffirm and adopt the aforesaid instrument as my
present will, in like manner as if now executed by me, but modi-

fied pursuant to this codicil, which in connection with, and amendment of my will, I now publish and declare together as constituting my last will and testament."

After the death of Mrs. Proctor the executors named in her will presented the said will and codicil to the surrogate of Munroe for probate, whereupon the surrogate issued the necessary citations requiring the husband and next of kin of Mrs. Proctor to appear before him at a time and place specified to attend the probate of said will. The brother of Mrs. Proctor appeared in obedience to said citation and opposed the probate of said will on the following grounds:

First. The said instruments are not, nor is either of them, the last will and testament of the deceased.

Second. The alleged will and codicil were procured by undue influence.

Third. The deceased was not of sufficient capacity to understand, and did not understand the contents of said instrument purporting to be her last will and testament, and in the month of October, 1876, she married Truman A. Proctor, and said alleged will was thereby revoked and became null and void.

Fourth. Said instruments were not executed by Mrs. Proctor and published as her last will and testament.

The capacity of the testatrix to make a will was clearly established, and the execution of both the will and codicil were sufficiently proved; unless the surrogate should hold that the testatrix could not revive the will by the codicil, except by re-executing and republishing it.

The marriage of the testatrix after the execution of the will was conceded before the surrogate, and the contestants insisted that the marriage revoked the will. To this it was answered, that if that was so, the execution of the codicil revived it.

The surrogate, after hearing the proofs and allegations of the parties, held that the will made in August, 1873, was duly executed at its date, and that the testatrix was competent to make it. He also held that there was no undue influence exercised over her, and that the codicil was also duly executed, but that inasmuch as the testatrix did not re-execute the original will, she died without a will; that as there was no will there could be no codicil, and he

refused to admit the will to probate. The surrogate in his opinion, said, among other things, " to re-establish the instrument of August 25, 1873, as a will, there must be a re-execution or a new execution of it. The same formalities must be complied with as in the first instance. In the execution of the codicil of December 7, 1876, these formalities were all complied with except the third, which requires the declaration by the testator that it is his last will and testament Instead of this, it was declared to be a ' codicil to her last will and testament, and a reaffirmation of the latter.' Had this declaration then been that the instrument was her last will and testament, instead of a codicil, I should have no hesitancy in admitting it to probate as her will. But declaring it to be a codicil is not declaring it to be a will ; the terms are not synonymous."

From this decree the proponents appealed.

*H. R. Selden*, for the appellants.

*J. C. Cochrane*, for the respondents.

MULLIN, P. J.:

I infer from the case as presented to us, and from the opinion of the surrogate, that the question whether, since the passage of the married woman's act in 1848, the provision of 3 Revised Statutes, (§ 39, 145), which declares that a "will executed by an unmarried woman should be deemed revoked by her subsequent marriage" is not repealed, and that married women may not, since the passage of the act of 1848, make a will relieved from the restriction imposed by the section cited, was not discussed before nor considered by the surrogate.

The counsel for the contestants have not mentioned it in their points, nor do I remember that they discussed it on the argument of the appeal. It would be improper under these circumstances to assume to decide that question until the counsel of the respective parties are heard upon it.

I shall assume, for the purposes of this case without discussion, the question that a married woman's will, revoked by her marriage after its execution, may be revived by a codicil duly executed after

her marriage.    Such is the rule in England.    (Williams on Executors, 185), and is also the law in this State.    (*Van Cortlandt* v. *Kip*, 1 Hill, 590, and cases cited; Dayton on Surrogates, 142, 143.)

The codicil, in order to revive the prior will, must be executed with all the formalities prescribed by the statute for the due execution of a will.    (Dayton on Surrogates, 53.)

The surrogate has held in this case that the codicil was properly executed, but refused probate to it and to the will itself, because a re-execution of the will itself was not proved; in other words he refused to admit the will to probate on the sole ground that the testatrix did not, at the time of the execution and publication of the codicil, declare that the instrument made up of the will and codicil was her last will and testament.

The evidence of the subscribing witnesses to the will, as to the execution of it taken at the time of the probate of the codicil, is defective for the reason stated by the surrogate, and unless that defect was cured at the time of the proof of the codicil, the decree of the surrogate is right and must be affirmed.

Whittlesey, one of the witnesses to the execution of the codicil, testified, on the occasion of the attempt of proponents to prove the execution of the will and codicil, among other things, that a paper shown to him (being the codicil in question), was in his handwriting, and he saw it executed on the day of its date.

It was signed by Mrs. Proctor in his presence, and in the presence of Huntington the other subscribing witness.    Mrs. Proctor said it was a codicil to her last will — the will was lying on the table and was the will sought to be proved, and she requested the witness and Huntington to sign it as subscribing witnesses, and they did then and there and in her presence, and the presence of each other ; he was requested to go to the office, where the codicil was signed, by Mr. Atkinson, who had been the agent of her father during the absence of the latter in Europe ; Atkinson said Mrs. Proctor wanted us to go to the office.

On the further examination of the witness he states what occurred at the time of the execution of the codicil more succinctly, as follows : " I told Mrs. Proctor as soon as we were all together that the formality of publishing this codicil must now be gone

through, that we had sent for Mr. Huntington as a witness, for the reason that he was a witness to the original will; she then signed this instrument, this codicil in our presence. I then asked her to state what it was that she had been signing, and she replied it was a codicil to her last will and testament in republication and revival thereof.

The will before us was pointed out as the will to be republished and revived. She then, at my desire, stated what she wished us to do, as another formality was necessary. She replied that she wished us (Huntington and myself) to subscribe it as witnesses, which we then did. Before Huntington subscribed it I read over the attestation clause, which is my invariable practice, telling him if it was all true as there stated, to sign it; if not true, not to sign it. I called his attention to all the details necessary to the republication of the will, he read the clause and then signed it. * * * Mrs. Proctor was very careful to point out to us this identical will, and to say that she had it revived.

Charles W. Huntington, the other subscribing witness to the codicil, testified that the signature to the codicil of Mrs. Proctor's will was his, and he saw it signed by her, and by Whittlesey and himself as witnesses. At a subsequent day Huntington was again called by the proponents, and testified that since his former examination he had talked with Whittlesey and reflected upon the matter so as to remember more distinctly than before what took place at the time of the execution of the codicil.

The first that occurred after going to Atkinson's office, where the codicil was executed, was that Atkinson introduced him to Whittlesey, then Whittlesey read to him the last clause in the codicil. He said Mrs. Proctor wished him to act as a witness to the codicil, as he had been a witness to the will. He particularly referred him to the will that was lying on the table, and he told Mrs. Proctor they (the witnesses) were ready to sign it, just what he said he (witness) did not remember. Mrs. Proctor took Whittlesey's seat and signed the codicil. Whittlesey told her it was necessary for her to ask us to sign it, as witnesses, which she then did; he then made the remark that impressed itself on his mind that she must repeat it, as it was written in the clause; and then she repeated it from the clause

on the codicil, and she also said it was a codicil to her last will and testament, and asked us to sign it, and we did. One or two persons, who were present at the execution of the codicil, corroborate the subscribing witnesses as to what occurred on that occasion.

The due execution of the codicil was duly proved, and if its due execution revived the will, then the surrogate erred in refusing to admit to probate. It will not be claimed, I apprehend, that it was necessary to revive the will that the testatrix should re-sign it.

The evidence given before the surrogate proved that the will was signed by the testatrix at the time of its execution. But that proof was not such evidence as established its due execution after it had been revoked. There must be further evidence of execution, but all that was required further was a clear and distinct recognition of the existence and validity of the will, when the codicil was presented for probate. The proof of the due execution of the will was not done away by the marriage, but as the will itself was revoked it ceased to be of any avail until the testatrix by the codicil and recognition of it gave it new life, and then the will and codicil became valid and operative instruments. A more unequivocal recognition of the will and intention to revive could not be made, than was made by the testatrix at the execution of the codicil.

The mere act of executing a codicil and publishing it as such, implies the existence of another instrument which is called the will, and incorporates the will with the codicil, and the due execution of the codicil is a due execution of the will.

In Williams on Executors (185) it is said a codicil will amount to the republication of the will to which it refers, whether the codicil be or be not annexed to the will, or be or be not confirmatory of it, for every codicil is in construction of law part of a man's will, whether it be so described in such codicil or not, and as such furnishes conclusive evidence of the testator's considering his will as then existing. (See, also, note second to pages cited.)

It may be that the proposition just stated should be modified, yet to the extent that is necessary to sustain the rule, as we have stated it, it seems to me good law. It is doubtless true that the

English statute, regulating the manner of proving wills, is in many respects different from ours, yet the end to be attained by both being the same, the practice under one should be substantially the same under the other, unless a positive enactment has prescribed a different practice.

I should have been better satisfied with the will under consideration had the testatrix made a more generous provision for her relatives, but being of sound and disposing mind and memory, and not under improper influence, it was her privilege to make such disposition of her property as she thought to be just and wise, and the court has neither the power nor the inclination to deprive the parties, to whom she has given the property, of any portion of it.

If the tendency of the age is for owners of property to give to religious and benevolent purposes and institutions too large a share of it, to the prejudice of relatives having claims on their bounty, it is the province of the Legislature to interfere and prevent it. The courts have power only to see that the disposition of property to benevolent and religious purposes is made in conformity to the law. Their duty is to see that wills are duly executed, and to give effect to their provisions when in conformity to law.

The decree of the surrogate, refusing to admit the will and codicil to probate, is reversed, with costs, to be paid out of the estate, and the proceedings are remitted to the surrogate of Monroe, with directions to admit the same to probate.

Present — MULLIN, P. J. and TALCOTT, J.

SMITH, J., not taking any part in the decision.

Decree reversed, with costs — the appellants to be paid out of the estate, and proceedings to be remitted to the surrogate of Monroe county, with directions to admit will and codicil to probate.